UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
EDUIN DANIEL GONZALEZ GARCIA,

Petitioner,

v.

**MEMORANDUM AND ORDER**
26-CV-05005 (OEM)

ROBERT BROWN, *et al.*,

Respondents.
---------------------------------------------------------x

ORELIA E. MERCHANT, United States District Judge:

On August 14, 2026, Eduin Daniel Gonzalez Garcia ("Petitioner") filed a petition for a writ of habeas corpus against Robert Brown, in his official capacity as warden of Metropolitan Detention Center; Judith Almodovar, in her official capacity as New York Field Office Director for United States Immigration and Customs Enforcement ("ICE"); Todd Blanche, in his official capacity as Attorney General of the United States; and Markwayne Mullin, in his official capacity as the Secretary of Homeland Security (collectively, "Respondents"). *See generally* Emergency Petition for Writ of Habeas Corpus, Dkt. 1 ("Petition" or "Pet."). Petitioner seeks his immediate release and challenges the lawfulness of his ongoing detention by ICE under the Immigration and Nationality Act ("INA") and the Fifth Amendment of the U.S. Constitution ("Fifth Amendment"). *See id.*

For the following reasons, Petitioner's request for immediate release is granted.

## BACKGROUND

### A. Petitioner's 2022 Entry and Parole

Petitioner is a Venezuelan national. Declaration of Frantz Joseph ¶ 1, Dkt. 15-1 ("Joseph Decl."). He entered the United States without inspection at or neat Eagle Pass, Texas on July 8, 2022, and was encountered by U.S. Customs and Protection following his entry. *Id.* ¶ 3. On July

9, 2022, Petitioner was issued a Form I-94 and paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5)(A) ("Section 1182(d)(5)(A)"). *Id.* ¶ 4.

Petitioner's parole under Section 1182(d)(5)(A) expired on September 8, 2022, and ICE declined to renew it. *Id.* ¶ 7. On November 2, 2022, ICE Enforcement and Removal Operations ("ERO") requested that Petitioner report to ERO on January 15, 2025, at 26 Federal Plaza, New York, New York ("26 Federal Plaza") to complete processing given the expiration of his parole. *Id.* ¶ 8. Petitioner failed to report to ERO at 26 Federal Plaza on January 15, 2025. *Id.* ¶ 9.

**B. Petitioner's 2026 Arrest**

On July 3, 2026, ERO officers were conducting a field operation in Jackson Heights, New York targeting another individual. *Id.* ¶ 10. During this operation, the officers approached and engaged Petitioner, whom they believed to be the intended target. *Id.* After identifying himself, the officers conducted a records check on Petitioner and determined that he failed to report as required for his appointment on January 15, 2025. *Id.* The officers then contacted a supervisor, who issued a Form I-200 warrant for Petitioner's arrest. *Id.* The officers subsequently arrested Petitioner pursuant to that warrant. *Id.*

During processing following his arrest, Petitioner was served with a Form I-862 Notice to Appear ("NTA") charging him with removability and initiating removal proceedings. *Id.* ¶ 11. Petitioner has participated in his removal proceedings, first appearing *pro se* at a master calendar hearing on July 28, 2026, and then appearing with counsel at a hearing on August 11, 2026. *Id.* ¶¶ 14, 16. Another master calendar hearing is scheduled for August 25, 2026. *Id.* ¶ 17.

Petitioner is currently detained at the Metropolitan Detention Center in Brooklyn, New York ("MDC Brooklyn"). *Id.* ¶ 11.

## DISCUSSION

Petitioner asserts that his continued detention violates the applicable statutory scheme under 8 U.S.C. § 1226(a) ("Section 1226(a)") and his due process rights under the Fifth Amendment. *See* Letter from Petitioner to the Court at 3 (Aug. 21, 2026), Dkt. 16 ("Pet'r Reply"). In opposition, Respondents contend that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) and therefore his due process claim fails. *See* Letter from Respondents to the Court at 3-5, 6 (Aug. 20, 2026), Dkt. 15 ("Return"). The Court first addresses the statutory basis for Petitioner's detention before turning to his due process claim.

### A. Statutory Basis for Petitioner's Detention

The Court joins the majority of federal district courts in holding that noncitizens who are detained after being paroled into the country under Section 1182(d)(5)(A) are subject to the discretionary detention authority of Section 1226, not mandatory detention under Section 1225. *See Qasemi v. Francis*, 25-cv-10029 (LJL), 2025 WL 3654098, at *11 (S.D.N.Y. Dec. 17, 2025) (collecting cases) ("[T]he termination by expiration of [petitioner's] parole returned him to the 'custody' of DHS pursuant to the INA. Because he was paroled, and because he is not an arriving alien, he is no longer subject to the mandatory detention provision of Section 1225(b)(1). The outcome of this textual analysis is ultimately simple: absent ongoing parole status, Section 1182 mandates that [petitioner] be treated just as the INA would treat any noncitizen previously granted parole and living in the United States."); *Hernandez Villasmil v. Blanche*, 9:26-CV-713 (MAD), 2026 WL 1235068, at *4 (N.D.N.Y. May 5, 2026) (collecting cases) ("The majority of federal district courts addressing the issue have concluded . . . that the mandate in 8 U.S.C. § 1182(d)(5)(A), which requires a noncitizen to be returned to the custody from which he was paroled when the purposes of such parole shall, in the opinion of the Secretary of Homeland

Security, have been served, requires the petitioner to be treated just as the INA would treat any noncitizen previously granted parole and living in the United States."(quotations omitted)).

Accordingly, not only is Petitioner eligible for release on bond, *Barbosa da Cunha v. Freden*, 175 F.4th 61, 71 (2d Cir. 2026), but "Section 1226(a) and 8 C.F.R. 1236.1(c)(8) require ICE officials to make an individualized custody determination" prior to or contemporaneous with the decision to detain. *Arango v. Genalo*, 25-CV-6720 (RER), 2025 WL 3637500, at *2 (E.D.N.Y. Dec. 16, 2025) (citing *Gopie v. Lyons*, No. 25-CV-05229 (SJB), 2025 WL 3167130, at *2 (E.D.N.Y. Nov. 13, 2025)). "ICE must allow the noncitizen to 'demonstrate to the satisfaction of the officer that [] release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding.'" *Kelly v. Almodovar*, 25 Civ. 6448 (AT), 2025 WL 2381591, at *3 (S.D.N.Y. Aug. 15, 2025) (alterations in original) (quoting 8 C.F.R. §§ 1236.1(c)(8), 236.1(c)(8)).

**B. Due Process**

Whether Respondents' actions pursuant to Section 1226(a) comported with the principles of due process is governed by the three-part balancing test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020) (applying *Mathews* to determine the adequacy of process in the context of civil immigration confinement). The determination of what procedures are required under the Fifth Amendment requires consideration of: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

With respect to the first prong of the *Mathews* test, Petitioner invokes "the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez*, 978 F.3d at 851 (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)); *see also Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects.").

With respect to the second prong of the *Mathews* test, Respondents' procedure presents a high risk of erroneous deprivation. "The purpose of requiring an exercise of discretion [under Section 1226(a)] prior to the decision to detain a noncitizen who is not subject to mandatory detention is to prevent an erroneous deprivation of liberty." *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 495 (S.D.N.Y. 2025); *see also id.* at 497 (explaining that ICE must "engage in a deliberative process prior to, or contemporaneous with, the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause"). Here, there is no indication that an individualized determination was made as to Petitioner. There is no mention of dangerousness or flight risk in Respondents' supporting ICE declaration, *see generally* Joseph Decl., and Respondents' contention that Petitioner's detention is mandatory further evidences a lack of an individualized determination, *see J.H.F. v. Arteta*, 26 Civ. 4076 (AT), 2026 WL 1724066, at *7 (S.D.N.Y. June 14, 2026) ("[B]ecause the Government (incorrectly) contends that [petitioner's] detention is mandatory, it has made little effort to show that it exercised any discretion when deciding whether [petitioner] should be detained." (quoting *Salgado v. Francis*, 25-CV-6524 (VEC), 2026 WL 915304, at *7 (S.D.N.Y. Apr. 3, 2026))). Accordingly, the risk of erroneous deprivation is high.

With respect to the third *Mathews* prong, Respondents' interest in detaining "individuals under 8 U.S.C. § 1226(a) is valid where it advances a legitimate governmental purpose," such as

"ensuring the appearance of aliens at future immigration proceedings" and "preventing danger to the community." *Valdez v. Joyce*, 803 F. Supp. 3d 213, 218 (S.D.N.Y. 2025) (first quoting *Velasco Lopez*, 978 F.3d at 854; and then quoting *Zadvydas*, 533 U.S. at 690). Here, there was no initial determination as to the need to detain Petitioner and therefore no legitimate governmental interest was advanced when detaining him.

Taken together, Petitioner's ongoing detention violates his due process rights. *See Valdez*, 803 F. Supp. 3d at 219. Given the deprivation of Petitioner's liberty, the absence of deliberative process when he was initially detained, and the statutory and constitutional rights implicated, a writ of habeas corpus is the only form of relief and the most appropriate remedy.[1]

**CONCLUSION**

For the foregoing reasons, Petitioner's request for immediate release from custody is granted. When releasing Petitioner, Respondents may not impose additional conditions of release such as electronic or ankle monitoring without an individualized determination. *See Khabazha v. U.S. Immigr. and Customs Enf't*, 25-CV-5279 (JMF), 2025 WL 3281514, at *3 (S.D.N.Y. Nov. 25, 2025) (first citing *Vega v. Schneiderman*, 861 F.3d 72, 74 (2d Cir. 2017); and then citing *Hensley v. Mun. Ct., San Jose Milpitas Jud. Dist.*, 411 U.S. 345, 351 (1973)) (concluding that electronic monitoring and ankle monitoring amount to custody for habeas purposes). By August 24, 2026, Respondents shall certify compliance with this order by filing on the docket and noting specifically that Petitioner has been released.

[1] Because the Court determines that Petitioner's detention violates his due process rights, it need not address his remaining claims. *See, e.g.*, *Valdez*, 803 F. Supp. 3d at 217 n.4 (declining to address remaining claims after determining that the petitioner's detention violated due process).

The Clerk of Court is directed to enter judgment in accordance with this order and close this case.

SO ORDERED.

*/s/*
ORELIA E. MERCHANT
United States District Judge

August 21, 2026
Brooklyn, New York